**GULFSTREAM NATURAL GAS SYSTEM, L.L.C., Petitioner**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent**

No. 01–1207.

United States Court of Appeals, District of Columbia Circuit.

May 10, 2002.

Before GINSBURG, Chief Judge, and RANDOLPH and TATEL, Circuit Judges.

## JUDGMENT

PER CURIAM.

This petition for review was considered on the record from the Federal Energy Regulatory Commission and on the briefs filed by the parties. It is

ORDERED AND ADJUDGED that the petition for review be denied for the reasons given in the attached memorandum.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. See Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

## MEMORANDUM

Gulfstream asks this court to hold arbitrary and capricious the decision of the FERC to require the Company to use the same 70%/30% debt/equity structure for calculating its Allowance for Funds Used During Construction as it used for calculating its cost allowance for the entire operation. The Company, which proposes to use 100% equity to calculate its AFUDC, argues principally that the Commission departed from its precedent by choosing not to use the "project-finance" approach for calculating AFUDC. The Commission reasonably rejected this argument on the ground that "Gulfstream's AFUDC proposal differs in one significant manner from those previously authorized by the Commission: the AFUDC rate which Gulfstream has calculated to reflect its proposed phase-in of debt financing is higher than the rate of return which the Commission would authorize for an operating asset." Indeed, the Commission required

the same thing of Gulfstream as it has of every other new pipeline company to which it applied the project-finance approach: that the Company use the same debt/equity structure for AFUDC as it uses for everything else. Gulfstream can point to no case in which the FERC has departed from this policy.

The policy of requiring the construction return rate to mirror the overall return rate rather than to reflect the actual costs incurred in financing construction embodies the goal behind the Commission's regulations for calculating AFUDC: to permit a company "to achieve a rate of return on its total utility operations, including its constructions program, at approximately the rate which would be allowed in a rate case." Amendments to Uniform System of Accounts for … Natural Gas Companies … to Provide for the Determination of Rate for Computing the Allowance for Funds Used During Construction, 57 F.P.C. 608, 608 (1977). Allowance for construction costs, like allowance for other costs, is not intended to let a company recoup its actual costs, no matter how high they may be. Indeed, in the case upon which Gulfstream chiefly relies, the Commission approved an overall 70%/30% rate structure "regardless of the project's actual … capital structure." Alliance Pipeline L.P., 80 F.E.R.C. ¶ 61,149, at 61,592 (1997), 1997 WL 465607, at *4.

Gulfstream cites a one-sentence dictum in Alliance to support its contention that it may recover its actual costs of financing construction. See 80 F.E.R.C. at ¶ 61,602, 1997 WL 46560 at *17 ("Under a project financing approach, the actual net cost of debt (short-term and long-term) and equity specifically issued for the construction will be capitalized"). But Gulfstream does not dispute the Commission's point that the company in Alliance, like the companies in the other cases Gulfstream cites,

used the same 70%/30% debt/equity structure for AFUDC as it used for its other costs. *See* 80 F.E.R.C. at ¶ 61,592. Gulfstream never suggests that Alliance, unlike Gulfstream, actually used the same debt/equity structure to finance both construction and other parts of the operation. In fact, Gulfstream in its brief suggests the opposite: "[N]ew, large-scale pipelines typically fund most pre-construction activities with equity, and begin phasing in short-term and long-term debt at or near the time they commence construction." If Alliance, like Gulfstream, used mainly equity to finance pre-construction activities, then the FERC has done the same thing to Gulfstream that it did to Alliance and to all the other new pipeline companies—i.e., require the Company to use the same debt/equity structure for AFUDC that it used for other funds, regardless whether that structure was actually used to finance the construction. There is no inconsistency, nor is the decision of the FERC arbitrary and capricious in any way suggested by Gulfstream.